THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ELLEN EDWARDS, Defendant-Appellee.

First District (2nd Division)    No. 80-1101

Opinion filed June 16, 1981.

STAMOS, J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellee.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

The State appeals from the trial court's "acquittal" of defendant, Ellen Edwards, and seeks to invoke appellate jurisdiction to review that disposition under Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1)), which permits the State to appeal orders of dismissal. The State alleges that the substantive effect of the trial court's action was to improperly dismiss the charge against defendant rather than to acquit.

The information filed by the State on October 24, 1979, in the instant case named three defendants, V. O. James, otherwise called James Mansfield, Ellen Edwards, the present defendant, and Reginald Fisher, charging all three with theft. The three were arraigned on October 29, 1979. From that time, the State proceeded against all three in one action, until the date on which the events of which the State complains occurred. When the cause came on for trial on March 19, 1980, the trial court granted a continuance to March 24, 1980, to two of the three defendants, V. O. James and Reginald Fisher, who were apparently experiencing some difficulty with respect to securing defense counsel.

The trial court then asked whether the State was ready for trial in the case of defendant Ellen Edwards. The prosecutor responded that: it was the State's intention to try all three defendants together; the State was attempting to comply with the trial court's desire to go to trial on the case of Ellen Edwards and was "* * * amenable to try her case separately from the other defendants though there * * * [were] really no grounds for severance"; the State had made attempts to get the arresting officers into court that day but both were on furlough and could not be reached by telephone; and because the officers could not be present, and the State had never before sought a motion for a continuance, it respectfully requested that the Ellen Edwards case be given the same date the co-defendants received, March 24, and it would at that time be ready to proceed one way or another with that case.

It was upon this background of two previous continuances sought by and granted to defendants and five "by agreement" continuances, in addition to the two continuances granted to the co-defendants that very morning, that the trial court stated:

> "I don't know what I can do to communicate with the State's Attorneys in this court that when I say trial I mean trial. So the motion for continuance is denied."

The trial court then inquired as to the State's evidence. The State responded that it had none to put on by virtue of the absence of its key witnesses. The prosecutor stated:

"Mr. Romano: We are not prepared for we have no witnesses in court.

The Court: Do you wish your client to testify?

Mr. Morse [public defender representing Edwards]: Yes, I do, Judge."

Thereafter, defendant Edwards, called on her own behalf, was sworn and testified as to her version of the circumstances and arrest. The court then inquired as to whether the State would cross-examine to which the prosecutor responded:

"Mr. Romano: Your Honor, the State respectfully states for the record we do not believe there's a legitimate case or controversy before the Court and we have no questions.

"The Court: All right, argument? State [sic] wish to argue?

Mr. Romano: The State, for the record, states we are not party [sic] to this proceeding and we have no argument."

The trial court thereafter found defendant Edwards not guilty and she was discharged.

The State contends, under the foregoing circumstances, that defendant was not "put to trial" so as to have exposed her to jeopardy, relying upon *People v. Deems* (1980), 81 Ill. 2d 384, 410 N.E.2d 8, *People v. Shields* (1979), 76 Ill. 2d 543, 394 N.E.2d 1161, *People v. Dellecarto* (1978), 67 Ill. App. 3d 490, 384 N.E.2d 902, and *People v. Shick* (1968), 101 Ill. App. 2d 377, 243 N.E.2d 285. *People v. Deems* appears to provide the necessary guidelines for an appropriate disposition of this case. In *Deems,* defendant was indicted for knowingly receiving stolen property, and on the date set for trial the State moved to dismiss the charges, conceding that defendant was not guilty of that charge, but that an indictment would be sought against him for theft which the State would be ready to prosecute within a week. Notwithstanding the State's admission that the defendant did not commit the offense with which he was charged, defendant demanded an immediate trial on the original charge and the trial court, likening the State's motion to a request for continuance, decided that defendant was entitled to go to trial if he was prepared to do so. The trial court called the case for trial despite the State's protestations. Defendant waived a jury trial. When the trial judge called for witnesses to be sworn, only defendant did so, but he did not testify. The State again indicated that it had no witnesses to call. The trial court then found defendant not guilty and entered its judgment acquitting him. A subsequent indictment for theft was dismissed on double jeopardy grounds, from which the State appealed seeking reversal of both the acquittal and reversal.

In upholding the reversal adjudged by the appellate court, the

supreme court in *Deems* made the following observations, among others (81 Ill. 2d 384, 389-90):

> "While the judge denominated his action an 'acquittal,' it bore none of those characteristics except the label. *The proceedings were not an attempt by the State to convict defendant.* * * *
>
> The 'trial' held at the first proceeding was a sham, an artifice employed by the trial judge to achieve the result of a dismissal with prejudice for want of prosecution which [*People v.*] *Thomas* [(1975), 24 Ill. App. 3d 907,] had held he did not have the authority to order. * * *
>
> The interests protected by the double jeopardy clause simply are not threatened in this case. The traditional rule is that jeopardy attaches in a bench trial when the first witness is sworn and the court begins to hear evidence. [Citations.] *That rule is predicated upon the fact that the first witness is normally an individual whose testimony is part of the State's case—a prosecution witness whose appearance is a part of the incriminating presentation jeopardizing defendant.* Here, the only person sworn was the defendant himself, and he did not testify. No evidence of any type was introduced, and it is clear that defendant was at no time during these proceedings in danger of being found guilty of any offense." (Emphasis supplied.)

In the case at bar, the State refused to participate in the proceedings and declined to involve itself in any prosecutorial activities, as in *People v. Deems.* The trial court here was without authority to assume the mantle of prosecutor; that role is reserved to the State by Constitution (Ill. Const. 1970, art. II, §1) and by statute (Ill. Rev. Stat. 1979, ch. 14, par. 5). *People v. Ruiz* (1979), 78 Ill. App. 3d 326, 334, 396 N.E.2d 1314, *cert. denied* (1980), 81 Ill. 2d 597; *People v. Rotramel* (1972), 5 Ill. App. 3d 196, 282 N.E.2d 484.

Defendant in the instant case voluntarily took the stand and gave such exculpatory testimony under questioning by her lawyer as she felt she wished to give. The trial court asked no questions and the State maintained its posture of noninvolvement. When asked if he wished to cross-examine, the assistant state's attorney responded, "Your Honor, * * * we do not believe there's a legitimate case or controversy before the Court and we have no questions." When the trial court asked whether the State wished to argue, the assistant state's attorney responded "* * * we are not party to this proceeding and we have no argument." No argument was presented by the defense. The trial court did not direct defendant to take the stand but simply asked, "Do you wish your client to testify?" Nor surprisingly, in light of the State's having already asserted that it would not go forward with the prosecution, counsel for the defense

responded, "Yes, I do, Judge." Defendant's "testimony" was entirely self-serving in view of the unremarkable absence in the facts she related of any suggestion of a vital element which would have had to have been proved under the charge of theft, namely, intent. (Ill. Rev. Stat. 1979, ch. 38, par. 16—1.) In fact, the absence of evidence of intent was the principal basis of the trial court's "acquittal" in this instance, in which it stated, "Ellen Edwards is found not guilty, there's no proof of intent among other things." The patent distinction between the instant case and *People v. Deems* is that in *Deems* no testimony was elicited from defendant, whereas here defendant did take the stand and answer her lawyer's questions. Under the circumstances presented here, however, as set forth above, it is difficult to see how either in law or common sense her election to testify in the absence of prosecution can have exposed her to jeopardy, single or double.

The origin and history of the double jeopardy clause was again recently reviewed by the United States Supreme Court in *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187. There, the court noted the purpose underlying the prohibition against double jeopardy, citing and quoting from *Green v. United States* (1957), 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223, stating:

> " ' "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal  and compelling him to live in a continuing state of anxiety and insecurity. . . ." '[Citation.]

Upon fuller consideration, we are now of the view that this language from *Green*, while entirely appropriate in the circumstances of that opinion, is not a principle which can be expanded to include situations in which the defendant is responsible for the second prosecution." (437 U.S. 82, 95-96, 57 L. Ed. 2d 65, 77, 98 S. Ct. 2187, 2196.)

The canvas presented in the case at bar not only fails to depict "* * * the State with all its resources and power * * * [making] repeated attempts to convict an individual for an alleged offense * * *," but a defendant who, at the invitation of the trial court, knew that in the posture of the proceedings there was no chance for her to have been found guilty beyond a reasonable doubt. To apply the double jeopardy clause to such a portrait would be to exalt form over substance. This is not a case where a trial court evaluated the government's evidence and determined that it was legally insufficient to sustain a conviction (see, *e.g.*, *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 572, 51 L. Ed. 2d 642, 651,

97 S. Ct. 1349, 1355), but one in which the government presented no evidence whatsoever upon which the trial court could have based any evaluation at all. In short, there simply was no trial. In our opinion, therefore, this situation is analogous to that in *People v. Deems* (1980), 81 Ill. 2d 384, 390-91, in which the State was authorized to pursue an appeal under Supreme Court Rule 604(a)(1) and section 114—1(a)(2) of the Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1); Ill. Rev. Stat. 1979, ch. 38, par. 114—1(a)(2).

Neither *City of Peoria v. Davis* (1976), 39 Ill. App. 3d 557, 350 N.E.2d 531, nor *People v. Hurlbert* (1976), 41 Ill. App. 3d 300, 354 N.E.2d 652, support the trial court's procedure in the instant case. The appeal was simply dismissed in *Davis* because the State sought to reverse an adverse ruling on a preliminary motion to quash a search warrant and suppress evidence secured thereunder *after* the trial court there purported to have rendered a decision on the merits. The issue as to the propriety of the denial of a continuance was never raised in *Davis*, nor does the opinion consider whether or not the State participated in the so-called trial that took place thereafter. Likewise, those issues were not raised in *Hurlbert*.

Recognizing that a trial court must be permitted to maintain discretionary power, in appropriate circumstances, to deny continuances if a recalcitrant defendant has been attempting to thwart the trial court's efforts to "move its calendar" (*People v. King* (1977), 66 Ill. 2d 551, 557, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), and a trial court should deny continuances sought by the State where a defendant's right to a speedy trial will be improperly obstructed (*People v. Richards* (1980), 81 Ill. 2d 454, 459-61, 410 N.E.2d 833), neither of these circumstances was the situation obtaining here. Further, the State had announced its intention to try the three defendants together. No motion was made or ruled upon by the trial court for severance, and the other two defendants were granted five-day continuances to March 24, 1980, the same day sought by the State upon which to present its case against Edwards, as well as the other defendants. Upon these facts, it is difficult to discern any possible basis upon which the trial court could be deemed to have been exercising discretion to move its calendar.

Accordingly, the trial court's "discharge" of defendant Edwards is vacated, and the cause remanded for trial on its merits.

Reversed and remanded.

PERLIN, J., concurs.

Mr. JUSTICE STAMOS, dissenting:
I respectfully dissent. Supreme Court Rule 604(a)(1) sets out the

basic provision governing when the State may appeal dispositions of the trial court:

"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure * * *." (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1).)

Our supreme court, in *People v. Love* (1968), 39 Ill. 2d 436, 235 N.E.2d 819, made clear that the grounds for dismissal enumerated in section 114—1 are not all-inclusive and should not impede the State's appeal of any trial court judgment, the "substantive effect" of which is to constitute a dismissal of the information or indictment. (See *People v. Lawson* (1977), 67 Ill. 2d 449, 455-56, 367 N.E.2d 1244.) The State contends that this judgment of acquittal was in reality a dismissal of the information and thus appealable under Supreme Court Rule 604. Concluding that the trial court's disposition is appealable, the State argues that the trial court acted beyond its authority in "dismissing" the action where there was neither a clear showing of a due process violation nor explicit statutory grounds for the dismissal. (See *Lawson.*) The State relies on a long line of cases which stand for the proposition that the trial court can only dismiss for one of the reasons enumerated in section 114—1 of the Criminal Code, or for a clear due process violation. See Ill. Rev. Stat. 1979, ch. 38, par. 114—1; *People v. Shields* (1979), 76 Ill. 2d 543, 394 N.E.2d 1161, *cert. denied* (1980), 445 U.S. 917, 63 L. Ed. 2d 602, 100 S. Ct. 1279 (witness sworn as part of preliminary proceeding; no testimony relating to facts of crime; no jury waiver); *People v. Marbly* (1980), 85 Ill. App. 3d 935, 407 N.E.2d 721 (no witness sworn; no evidence heard); *People v. Dellecarto* (1978), 67 Ill. App. 3d 490, 384 N.E.2d 902 (no witness sworn; no evidence heard); *People v. Lipp* (1978), 63 Ill. App. 3d 1034, 380 N.E.2d 1007 (no witnesses sworn; no jury impaneled; no testimony); *People v. Thomas* (1975), 24 Ill. App. 3d 907, 322 N.E.2d 97; *People v. Abel* (1974), 21 Ill. App. 3d 314, 315 N.E.2d 136 (no witnesses sworn; no testimony heard); *People v. Barksdale* (1969), 110 Ill. App. 2d 163, 249 N.E.2d 165; *People v. Shick* (1968), 101 Ill. App. 2d 377, 241 N.E.2d 507.

A trial judge's characterization of his disposition as an "acquittal" rather than a "dismissal" is not controlling on its appealability. (See *United States v. Scott* (1978), 437 U.S. 82, 96, 57 L. Ed. 2d 65, 77, 98 S. Ct. 2187, 2196.) Rather, it is the actual nature of the disposition: whether it is a "judgment the substantive effect of which [is a] dismissal of the indictment." (*Love,* at 439.) My review of Illinois authorities discloses but one case which is on all points identical to that at bar; it holds that the trial court's disposition constitutes an acquittal and is therefore not appealable. In *City of Peoria v. Davis* (1976), 39 Ill. App. 3d 557, 558, 350 N.E.2d 531,

the "defendants were sworn to testify as witnesses and en masse each stated he was not guilty." The People presented no evidence because of a ruling, immediately prior, suppressing evidence.

> "Although the People have characterized their appeal as one arising from a dismissal of the charges by the trial court, the defendants characterized the appeal as one from a judgment of not guilty, a decision on the merits which is not appealable by the People. Having once been found not guilty, defendants urge the People have no right to appeal and hence the appeal should be dismissed.
>
> It is well settled that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal. (Ill. Const. art. VI, §6; Ill. Rev. Stat. 1973, ch. 38, par. 3—4(1).) * * * According to the trial court's written order the defendants were each found 'not guilty and ordered discharged.' We conclude this judgment is an acquittal after a hearing on the merits and therefore not an appealable judgment. (*People v. Kapande*, 23 Ill. 2d 230, 177 N.E.2d 825.)" (39 Ill. App. 3d 557, 558.)

The result in *City of Peoria* is consonant with the reasoning in those cases which have considered the instant situation. The apparent progenitor of this analysis is *People v. Thomas* (1975), 24 Ill. App. 3d 907, 322 N.E.2d 97. Though *Thomas* dealt with a dismissal prior to trial, the reviewing court considered the alternatives available to a trial judge confronted with a request for a continuance on the scheduled date of trial: "Where the motion for a continuance has been properly denied the case should be called for trial, and if no evidence or insufficient evidence is presented by the People, then a judgment of acquittal may be entered by the court." (*Thomas*, at 908.) In *People v. Guido* (1973), 11 Ill. App. 3d 1067, 297 N.E.2d 18, which also dealt with a trial court's improper dismissal prior to hearing evidence, the court commented:

> "The conclusion we have reached does not leave the court powerless to control its calendar. Besides discharging cases pursuant to defendants' rights, the court has contempt powers to require the State to appear. In the unlikely event that a prosecuting officer should refuse to proceed to trial after being ordered by the court to do so, the trial judge may order that the case proceed to trial." 11 Ill. App. 3d 1066, 1070.

In *People v. Hurlbert* (1976), 41 Ill. App. 3d 300, 354 N.E.2d 652, the trial court, after the jury was sworn and impaneled, ordered the State to proceed to trial, not on the charge brought by the State (aggravated battery), but on a lesser charge (simple battery). The State refused to put on evidence after the trial court denied a motion to amend the indictment to reinstitute the greater charge. The reviewing court found that the trial

judge's action in construing the indictment as only charging the lesser offense was erroneous and the State should have been allowed to proceed on the greater offense. Nevertheless, the reviewing court determined that jeopardy had already attached. Thus, even though the trial judge was mistaken in his ruling that the indictment did not charge aggravated battery and the State refused to put on evidence of either charge, retrial of defendant was barred on the offense charged because jeopardy had attached. See *Fong Foo v. United States* (1962), 369 U.S. 141, 143, 7 L. Ed. 2d 629, 631, 82 S. Ct. 671, 672 (although judgment was entered erroneously, retrial was barred by double jeopardy); see also *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 650-51, 97 S. Ct. 1349, 1354-55, quoting with approval *United States v. Ball* (1896), 163 U.S. 662, 671, 41 L. Ed. 300, 303, 16 S. Ct. 1192, 1195, ("[a] verdict of acquittal * * * could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution"); accord, *State v. Bryant* (1971), 31 Ohio Misc. 230, 277 N.E.2d 264; *Commonwealth v. DiPasquale* (1968), 431 Pa. 536, 246 A.2d 430.

The result in both lines of cases is sustained by a review of the pertinent statutes. Section 114—1 of the Criminal Code lists ten specific grounds for the trial court's dismissal on defendant's motion of the State's prosecution. It further provides some extent of discretion to the trial court in granting a dismissal. The only provision allowing dismissal where the State is not ready to proceed to trial is 114—1(a)(1): "The defendant has not been placed on trial in compliance with Section 103—5 of this Code." (Ill. Rev. Stat. 1979, ch. 38, par. 114—1(a)(1).) Section 103—5 is the Speedy Trial Act, which, essentially, allows the State either 120 days or 160 days (dependent on the incarceration status of defendant) to bring defendant to trial. Thus the only statutory ground for dismissal, as the cases listed earlier indicate, is the Speedy Trial Act. Our supreme court in *People v. Lawson* held that a trial court has "inherent" power to dismiss where there has been a constitutional or due process violation. (67 Ill. 2d 449, 456; see *Love*, at 443 (statutory speedy trial right does not necessarily delimit constitutional right).) Defendant in the instant case has not argued either of these grounds as a basis for the trial court's action. Accordingly, if defendant's "acquittal" were in actuality a "dismissal," the trial court's action would be an unauthorized dismissal, and double jeopardy would not bar retrial.

Nevertheless, in the instant case, the proceedings below advanced beyond the dismissal stage considered in *People v. Deems* (1980), 81 Ill. 2d 384, 410 N.E.2d 8, and *People v. Shields* (1979), 76 Ill. 2d 543, 394 N.E.2d 1161. Rather, with the swearing of a witness and the taking of evidence, the trial below proceeded to a point where the holdings in

*People v. Hurlbert* (1976), 41 Ill. App. 3d 300, 354 N.E.2d 652, and *City of Peoria v. Davis* (1976), 39 Ill. App. 3d 557, 350 N.E.2d 531, are apposite. The rule of *Hurlbert* and *City of Peoria* is also consistent with the controlling statutory provision. Section 114—4, governing the issuance of continuances, provides in relevant part:

"(c) A motion for continuance made by the State more than 30 days after arraignment *may be granted* when:

❋ ❋ ❋

(2) A material witness is unavailable ❋ ❋ ❋.

❋ ❋ ❋

(h) This Section shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 114—4(c), (h).) The statute affords the trial court the discretion to issue or deny continuances. This would be a merely illusory grant of discretion if a recalcitrant prosecutor could thwart the trial court's attempt to move its calendar of cases. It has long been held that a trial court has the right to refuse a continuance to a defendant, even if it amounts to forcing the defendant to trial without witnesses. (See *People v. King* (1977), 66 Ill. 2d 551, 557, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 894, 98 S. Ct. 273 (defendant may be forced to trial where there is no showing of diligence; trial judge's denial of a continuance is evaluated on the facts and circumstances attendant to his ruling); accord, *Mitchell v. State* (1979), ___ Ind.___, ___, 398 N.E.2d 1254, 1256; *Traylor v. State* (1975), 164 Ind. App. 50, 52, 326 N.E.2d 614, 616.) These cases have not focused on the propriety of forcing a defendant to trial but rather on whether the denial of a continuance was an abuse of discretion. (See *People v. Poland* (1961), 22 Ill. 2d 175, 178, 174 N.E.2d 804 (action of trial judge in granting or denying continuance will not be disturbed without clear abuse of discretion); *People v. Peterson* (1979), 70 Ill. App. 3d 205, 209, 387 N.E.2d 951 (defendant's motion is considered in light of the diligence shown by defendant, and whether the denial "embarrasses the defendant in the preparation of his case and prejudices his rights").) The policy behind granting the trial judge the discretion to allow or deny continuances is the " 'interest of the judicial system in avoiding delays' " (see *Commonwealth v. Grieco* (1977), 5 Mass. App. 350, 362 N.E.2d 1204, 1208); however, a court should not refuse a continuance where "the ends of justice clearly require it." (*Bullistron v. Augustana Hospital* (1977), 52 Ill. App. 3d 66, 70, 367 N.E.2d 88 (civil case); see *People v. Davis* (1970), 45 Ill. 2d 514, 519, 261 N.E.2d 314.) Acknowledging the established right of a trial judge to deny a continuance to a defendant, thereby forcing him to trial, the question is whether the trial court has the same right and

discretion with respect to the State. See *People v. Richards* (1980), 81 Ill. 2d 454, 460, 410 N.E.2d 833.

The statutory provisions which govern the issuance of continuances to the State and to the defendant show close correspondence. (See Ill. Rev. Stat. 1979, ch. 38, par. 114—4(a), (b), (c).) It is established that the trial court has the inherent authority to impose sanctions against the prosecutor in order to secure compliance with its orders. (See *People v. Endress* (1969), 106 Ill. App. 2d 217, 222-23, 245 N.E.2d 26.) Further, it is clear that the trial court has the discretion to decline to permit the State's attorney to enter a *nolle prosequi. (People ex rel. Hoyne v. Newcomer* (1918), 284 Ill. 315, 323-25, 120 N.E. 244 ("The acts of the State's attorney are not purely ministerial but involve in a large measure the exercise of discretion as a minister of justice, but it does not follow that the court charged with the administration of the law has no authority over the records of his court but is a purely ministerial officer for recording the will of the State's attorney"); see also *People ex rel. Kunstman v. Nagano* (1945), 389 Ill. 231, 250, 59 N.E.2d 96.) As always, however, the exercise of the trial court's discretion is reviewable and may be reversed where defendant has not been placed in jeopardy and the trial court's action was improper or an abuse of its discretion. See *People v. Deems* (1980), 81 Ill. 2d 384, 390-91, 410 N.E.2d 8 (witness sworn but no testimony adduced, thus no double jeopardy interests arise; action of trial court was reversed and case remanded).

Thus, both by its inherent and statutory authority and by analogy to supreme court cases treating the trial court's discretion to refuse defendant a continuance, the trial court has discretion to deny or issue continuances to the State, even if it amounts to forcing the prosecution to trial. (See L. Bonaguro, *Continuances—The Trial Judge's Authority and Responsibility*, 67 Ill. B.J. 106, 116 (1978) ("the same authority the court has to compel a defendant to go to trial is also applicable to the state").) It must be stressed that this discretion is normally subject to review. In the instant case, however, the interests protected by the constitutional prohibition of double jeopardy bar that review.

The State contends, while not citing or distinguishing either *Hurlbert* or *City of Peoria*, that *Deems* controls the instant case. In *Deems*, our supreme court held that jeopardy had not attached and did not bar remand for trial where a witness was sworn but no testimony was adduced. The result in *Deems* is entirely consistent with the proposition that jeopardy has attached in the instant case. In *Deems*, the prosecutor was attempting to dismiss the charges against defendant. Unlike *Deems*, in the case at bar, the prosecutor intended to proceed to trial on the charges against defendant, only at a time more convenient to the State. Both cases involved bench trials, and in both cases defendant was sworn.

In *Deems*, however, defendant *did not testify*. In the instant case defendant testified. *Deems* clearly excepts from its holding those instances where evidence is introduced. (See *Deems*, at 390.) In the instant case sworn testimony was introduced; the trial court found the evidence insufficient to convict. (See *United States v. Scott* (1978), 437 U.S. 82, 91, 57 L. Ed. 2d 65, 74, 98 S. Ct. 2187, 2193-94 ("To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty' ").) When the trial judge terminated the proceedings on the basis of his determination of factual guilt or innocence, the interests protected by the provisions against double jeopardy arose. (See *Shields*, at 546 (jeopardy attaches when first witness sworn *and* court begins to hear evidence); see also *Scott*, at 99; *Serfass v. United States* (1975), 420 U.S. 377, 388, 43 L. Ed. 2d 265, 273-74, 95 S. Ct. 1055, 1062-63 (in nonjury trial, jeopardy attaches when the court begins to hear evidence).) In accord with those cases which have considered the double jeopardy implications presented by the instant case, I find that the instant appeal is barred. This appeal is not permitted by the statutory provisions governing appeal from dismissals; more fundamentally, the State's appeal is disallowed by notions of double jeopardy. Thus no review of the judge's exercise of discretion, no matter how questionable it might appear, lies. I would dismiss the appeal.