185 N.J. Super. 600 (1982)
450 A.2d 604
STATE OF NEW JERSEY, PLAINTIFF,
v.
CRAIG NAPPO, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
May 5, 1982.
*601 John T. Wynne, Jr., Deputy Attorney General for plaintiff (Irwin I. Kimmelman, Attorney General of New Jersey, Attorney).
Victor P. Mullica, attorney for defendant.
COBURN, J.S.C.
A municipal court rejected defendant's substantial double jeopardy claim. Leave to appeal that interlocutory order is granted pursuant to R. 3:24(a).
In January 1981 the State filed a complaint in municipal court charging defendant with selling an alcoholic beverage to a minor, in violation of N.J.S.A. 33:1-7. Four trial dates were scheduled between February 19 and May 16, 1981, and on each occasion adjournments were granted at the State's request because it was unable to proceed.
On May 21, 1981 a part-time municipal prosecutor began presentation of the State's case. After his only witness had *602 testified, the prosecutor offered in evidence a certification of the Director of the Division of Alcoholic Beverage Control that the contents of the drink had been analyzed by a graduate chemist regularly employed by the Division and had been found to contain alcohol. Although such certifications are generally admissible (N.J.S.A. 33:1-37), defendant objected because despite previous discovery orders the State had failed to supply him with a copy of the certification in advance of trial. Defendant took the position that under those circumstances he was entitled to cross-examine the chemist. Over defendant's objection, the municipal judge then granted the State's request that the trial be continued.
On June 18, 1981, the next scheduled date, the prosecutor failed to appear. His associate obtained another continuance without offering any excuse for the State's inability to proceed. The judge indicated that any further delays would result in dismissal.
On September 3, 1981 the prosecutor again failed to appear. Another municipal prosecutor reported to the court that she had spoken to the trial prosecutor the night before. He claimed to be unaware of the September date and said he would not come to court since he had made plans to take a day off from work. At defendant's request, the municipal judge dismissed the complaint.
Twenty-six days later the State filed two complaints against defendant, one containing the identical charge previously dismissed and the other charging a similar sale which occurred at the same time and place and which was known to the State when the original charge was filed. The municipal court judge transferred the complaints to another judge for some reason not indicated in the record. The latter judge's refusal to dismiss these subsequent complaints is the subject of defendant's appeal.
The State concedes the applicability of double jeopardy standards to a trial commenced in a municipal court, State v. O'Keefe, 135 N.J. Super. 430 (Law Div. 1975), but contends that a *603 second trial is permissible here because in the initial proceedings the court did not determine guilt or innocence and the dismissal was at defendant's request. The defendant demands finality, claiming that prosecutorial misconduct bars a second trial. The State admits that "the conduct of the prosecuting attorney should not be condoned." Indeed, his intentional and wholly unjustifiable decision not to appear clearly constituted contempt of court. In re Yengo, 84 N.J. 111, 123-26 (1981). Nonetheless, the State asserts that his actions were not sufficiently egregious for double jeopardy to apply.
A defendant is "generally entitled to have a trial proceed to its conclusion, [and] to be free from the harassment of successive prosecutions." State v. Lynch, 79 N.J. 327, 340 (1979). A dismissal, as here, unrelated to guilt or innocence, is the functional equivalent of a mistrial. Id. 79 N.J. at 341. When a mistrial results from good faith prosecutorial error and is required as a matter of manifest necessity or is granted at defendant's request, there is no bar to retrial. State v. Farmer, 48 N.J. 145 (1966); United States v. Jorn, 400 U.S. 470, 486, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 557 (1971). However, when the circumstances bespeak bad faith, inexcusable neglect or oppressive conduct on the part of the State, the termination is final. State v. Farmer, supra, 48 N.J. at 174; State v. Rechtschaffer, 70 N.J. 395, 406 (1976).
In the leading United States Supreme Court case on this issue, United States v. Dinitz, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 276 (1976), Justice Stewart describes the quality of conduct which would prohibit another trial after a mistrial granted at defendant's request as "governmental actions intended to provoke mistrial requests" or "bad-faith conduct by [the] prosecutor [which] threatens the `harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." Although Justice Rehnquist's treatment of Dinitz in United States v. Scott, 437 U.S. 82, 94, 98 S.Ct. 2187, *604 2195, 57 L.Ed.2d 65, 76 (1978), might be understood as accepting the prohibition only when the prosecutor specifically intended to provoke a mistrial, that view certainly has not found acceptance in subsequent federal decisions. United States v. Enoch, 650 F.2d 115 (6 Cir.1981); United States v. Leppo, 641 F.2d 149 (3 Cir.1981); United States v. Rios, 637 F.2d 728 (10 Cir.1980); Mitchell v. Smith, 633 F.2d 1009 (2 Cir.1980). In Mitchell v. Smith, supra, the standard was expressed in these representative terms:
The Supreme Court has not clearly delineated what kind of conduct constitutes such overreaching as will invoke the exception. This Court, however, recently has held that such overreaching occurs when the prosecutor ... intentionally provokes a mistrial in order to obtain a second opportunity to convict or even absent such a provocation ... if the ... prosecutorial error was motivated by bad faith or undertaken to harass or prejudice the petitioner. [633 F.2d at 1011]
That formulation of the applicable test accords with our Supreme Court's pre-Scott definitions contained in State v. Farmer and State v. Rechtschaffer, both supra. In State v. Lynch, supra, decided after Scott, Justice Schreiber observed that a second trial does not violate the double jeopardy clause when the defendant had requested the mistrial unless his move was "triggered by prosecutorial misconduct." 79 N.J. at 341. There is no suggestion in the opinion that the prosecutor must have specifically intended to provoke defendant's motion for the bar to apply.
Cases in which prosecutorial conduct was considered to be sufficiently improper to prevent retrial after a proceeding aborted at defendant's request are rare indeed. None appear in the New Jersey reports.
In Commonwealth v. Warfield, 424 Pa. 555, 227 A.2d 177 (Sup. Ct. 1967), the prosecutor intentionally advised the jury of defendant's illegally obtained confession with the announced purpose of causing a mistrial on the mistaken theory that he could then appeal the trial judge's suppression of that evidence. In United States v. Kessler, 530 F.2d 1246 (5 Cir.1976), retrial was barred because the prosecutor intentionally introduced certain evidence knowing that it was inadmissible. In United States v. *605 Martin, 561 F.2d 135 (8 Cir.1977), the trial prosecutor had read to the jury improper and prejudicial remarks made by members of the grand jury and the grand jury prosecutor. The court observed:
If the government's actions in reading this irrelevant and highly prejudicial testimony to the jury were not intentionally designed to provoke a mistrial request, at a minimum they constitute gross negligence. It can best be described as prosecutorial error undertaken to harass or prejudice the defendant  prosecutorial overreaching. [at 140]
In the instant case the record reveals a pattern of deliberate dereliction on the part of the prosecutor respecting his duty to properly prepare and present the State's case. This culminated in his decision not to appear in court on two trial dates to complete presentation of the case he had commenced some 3 1/2 months earlier. Unquestionably, his conduct provoked the defendant's motion to terminate the proceeding. In light of the State's subsequent action in filing the additional complaint, which arose from the same criminal episode and was known before the first complaint was filed, it may well be that the prosecutor intended to provoke the motion for the proscribed purpose of improving the likelihood of conviction. See State v. Gregory, 66 N.J. 510 (1975). If such was not his intent, his actions, purposely causing a breakdown in the integrity of the judicial process, at the least, must be perceived as either motivated by bad faith or undertaken to harass the defendant.
N.J.S.A. 2C:1-9 sets forth a legislative enumeration of the circumstances in which a prosecution is barred by an improperly terminated prosecution. It reads in pertinent part:
d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts. Termination under any of the following circumstances is not improper:
(1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.
(2) The trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed.

*606 (3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.
The statute obviously is intended to be a summary of the judicially well-established common law and constitutional double jeopardy principles. The State relies upon subsection (1) as a basis for avoiding dismissal of the subsequent complaints, contending that every defense motion to dismiss during trial constitutes a waiver under the statute. However, "traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to ... prosecutorial error." United States v. Dinitz, supra, 424 U.S. at 609, 96 S.Ct. at 1080, 47 L.Ed.2d at 274. Of course, "where words used in a statute have received judicial construction, the Legislature will be deemed to have used them in a sense that has thus been ascribed to them." River Development Corp. v. Liberty Corp., 51 N.J. Super. 447, 466 (App. Div. 1958). Therefore, a defendant's motion to dismiss based on prosecutorial misconduct is not a waiver under a proper understanding of this statute.
The effect of the prosecutor's absence also may be viewed from a somewhat different perspective. In United States v. Jorn, supra, Justice Harlan observed: "The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning ... the double jeopardy provision...." 400 U.S. at 486, 91 S.Ct. at 557, 27 L.Ed.2d at 557. For example, the unexplained and inexcusable prosecution failure to properly subpoena necessary witnesses, brought to the court's attention after jeopardy has attached, generally bars retrial when the State requests a mistrial, Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); State v. Bryant, 31 Ohio Misc. 230, 277 N.E.2d 264 (Mun. Ct. 1971), or a continuance of undue length. State v. O'Keefe, supra. If the prosecutor's failure to have his witnesses available will prevent retrial, there can be no doubt that his intentional and inexcusable refusal to himself come to court should be treated similarly whatever his personal motives might have been.
*607 When the constitutional protection of double jeopardy has been infringed, no additional prejudice need be shown to prevent a second trial. Illinois v. Somerville, 410 U.S. 458, 471, 93 S.Ct. 1066, 1073-1074, 35 L.Ed.2d 425, 435 (1973). A failure to grant the motion to dismiss the complaints in the circumstances of this case would cede to the government the absolute power to subject individuals to repeated prosecutions. That course our Constitution will not countenance. Furthermore, State v. Currie, 41 N.J. 531 (1964), instructs that in applying the principles of double jeopardy "the primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." 41 N.J. at 539. Accordingly, the complaints are dismissed and the defendant shall be deemed to have been acquitted.