262 N.J. Super. 294 (1992)
620 A.2d 1083
STATE OF NEW JERSEY, PLAINTIFF,
v.
CURT HARRIS, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided November 18, 1992.
*296 Deborah Siegrist, Assistant Prosecutor for the State (Stephen Raymond, Prosecutor).
Robert P. Weishoff, for University Apartments.
WELLS, A.J.S.C.
This is an interlocutory appeal taken after a hearing and finding of probable cause in the Municipal Court of Pemberton Township. At the time of the hearing the court is informed the defendant could not be located and did not appear. The appeal, therefore, was not filed by the defendant (who was also not *297 noticed of the appeal for the same reason) but was filed by Mr. Robert Weishoff, a member of the bar of this State, who, prior to the hearing and pursuant to Rule 7:4-4(b) requested the court to permit him to act as prosecutor in the case. The regular Municipal Prosecutor who was present and was ready to proceed consented. For reasons hereinafter outlined the Municipal Court Judge declined and the case proceeded. Concluding that the issue raised is an important one concerning the administration of justice in our Municipal Courts, the court will decide the matter notwithstanding the unusual procedural posture and lack of notice to the defendant.
The charge against the defendant is that of defiant trespass in violation of N.J.S.A. 2C:18-3b, a petty disorderly offense. No police were involved, the charge having been levelled directly to the court clerk by the owner of an apartment complex, University Park Apartments, upon whose property the alleged trespass took place and whose owners have engaged Mr. Weishoff to represent it generally. In fact, the court takes notice that Mr. Weishoff represents a number of apartment complexes in Burlington County and regularly appears on their behalf in the Special Civil Part in eviction proceedings. It should be further noted that the defendant in this case was not a tenant but was the guest of a tenant. The reason Weishoff offered to step in as prosecutor sounded in assertions of familiarity with the facts of the case and his expertise in handling the legal problems of the complex. The Prosecutor, as stated above, agreed. He said:
However, I do concur with Mr. Weishoff's assessment of the situation, he represents the complex involved in this matter, he has had interviews with several of the witnesses, he has developed the pattern of this particular matter from beginning to end. And there are times in municipal court when there are other counsel who are more qualified on a particular case, based on the fact of their long-standing knowledge of the individuals involved. (Trans. p. 4, lines 4-11)
Nonetheless, the court denied the request. Pointing out that his "policy is quite independent of the individual attributes of Counsel to whom it applies" (Trans. p. 8, line 25, p. 9, line 1) and *298 that his rule "is ... certainly not a rule that is directed only at you, nor does it reflect any evaluation on my part of you or your adherence to the ethical precepts which guide the conduct of prosecutors" (Trans. p. 8 lines 6-8), the court ruled:
THE COURT; All right. I don't grant such requests. The principle (sic) reason being this: the prosecutor has an obligation, and that obligation is to the public, not to a private complainant. His obligation includes bringing to the Court's attention any information which is exculpatory as well inculpatory. That's not the whole extent of his obligation, but it's a feature of his obligation.
I find that employment by a private litigant, whether it be a complaining witness or another party who has an interest in the outcome, places the prosecutor in what I consider to be a difficult position. Because the prosecutor has an obligation to the person who employed him, and he has that other obligation to the public. It's conceivable that there may be tension between those obligations. Consequently I do not approve of private prosecutors when the public prosecutor is available.
Mr. Weishoff's skill with respect to trial of cases in municipal court is certainly well known and uncontested. His knowledge of the University Park Apartment Complex and the peculiar situations that may be present there is likewise acknowledged. But I don't find that those attributes justify a departure from the usual circumstance of the municipal prosecutor prosecuting the case. (Trans. p. 4 lines 20-25, p. 5 lines 1-17)
Rule 7:4-4(b) provides:
Appearance of prosecution. Whenever in his judgment the interests of justice so require, or upon the request of the court, the Attorney General, county prosecutor, municipal court prosecutor, or municipal attorney, as the case may be, may appear in any court on behalf of the state, or of the municipality, and conduct the prosecution of any action, but if the Attorney General, county or municipal court prosecutor or municipal attorney does not appear, any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the state or of the municipality. (emphasis added)
The Rule has not come under much state court scrutiny, although its existence and use to permit private attorneys to prosecute in municipal court has been acknowledged. Hand, Note, "Primitive Justice: Private Prosecutors in Municipal Court Under New Jersey Rule 7:4-4(b)," 44 Rutgers L.Rev. 205 (1991); State v. Corson, 192 N.J. Super. 612, 471 A.2d 818 (Law Div. 1983); State v. Burten, 207 N.J. Super. 53, 503 A.2d 907 (App.Div. 1986). A potentially serious problem with the rule was described in State v. Cantor, 221 N.J. Super. 219, 534 A.2d 83 (App.Div. 1987) where a privately retained prosecutor failed to disclose certain materials contained in his file which in a later *299 trial assisted the defense in cross examination of the State's witnesses. But the court did not discuss the impact of the Rule itself on the fairness of the trial process. And in the most recent case a Law Division Judge found that no cause of action for malicious prosecution arose in favor of a municipal court defendant against the Municipal Prosecutor who prosecuted him for theft on non-regularly scheduled trial days even though he was privately paid therefor by the victim. The court cited Ethics Opinion 523 which relied on the Rule in question. Fleming v. UPS, 255 N.J. Super. 108, 147-149, 604 A.2d 657 (Law Div. 1992).
However, the rule has been searchingly analyzed in two recent Federal District Court cases. State v. Kinder, 701 F. Supp. 486 (D.N.J. 1988) and State v. Imperiale, 773 F. Supp. 747 (D.N.J. 1991). Both cases involving assault and harassment charges were removed to the Federal District Court from their respective local municipal courts because the defendant was a postal employee. 28 USC Sec. 1442(a). In Kinder the local prosecutor declined to prosecute because his engagement with the City of New Brunswick did not extend to the Federal District Court and in Imperiale the prosecutor simply told the Municipal Court he would not prosecute. This left the alleged victims, Deborah Hadley and Gregg Foti respectively, both lay persons, to prosecute on their own.
Both courts perceived what they believed was the importance of Rule 7:4-4(b) in the New Jersey Municipal Courts. Judge Debevoise said:
This Rule contains both procedural and substantial rights, allowing a complaining witness who is the victim of a disorderly persons offense to enforce the criminal law in cases where the state or municipality lacks the resources to do so. The importance of the Rule becomes evident when one realizes that absent its use, disorderly persons offenses would go unprosecuted, harming not only the state's interest in enforcing its laws, but also the victim's (if not society's) interest in obtaining satisfaction for wrongs committed. Kinder, supra 701 F. Supp. at 488.
Judge Sarokin found:
The practical reasons for the rule are obvious. There are many instances in which the prosecutor, because of the nature of the complaint combined with *300 limited resources, chooses not to prosecute a particular complaint or category of complaints. Many personal disputes are and can be decided or resolved at the municipal court level without the time and expense of a local prosecutor. Imperiale, supra 773 F. Supp. at 748.
But, as reflected in the ruling of the learned Judge below, both federal judges also were wary of the potential due process and fair trial implications of the Rule under the Federal Constitution. U.S. Constitution, Amend VI; Amend XIV. Judge Debevoise framed the problem this way:
The defense contends that permitting Ms. Hadley's attorney to prosecute defendant would be unconstitutional because there is an impermissible conflict of interest between Ms. Hadley's attorney's role as private counsel and his role as the prosecutor in this case. More specifically, defendant argues that there is an inherent conflict which exists when a prosecutor has a pecuniary or other interest in the outcome of a criminal prosecution. .. . The defense in this case contends that this type of conflict renders Ms. Hadley's private attorney incapable of both faithfully representing Ms. Hadley's interests and simultaneously exercising the duties of a prosecutor. Those prosecutorial duties include the duty to disclose evidence favorable to the accused ... and the duties imposed by the New Jersey Rules of Professional Conduct which impose additional disclosure requirements and require that a prosecutor refrain from prosecuting a charge which is not supported by probable cause. Kinder, supra 701 F. Supp. at 490.
But he went on to uphold the rule by balancing its significant day-to-day usefulness in enforcing the disorderly and petty disorderly persons statutes against the minimal threat to the liberty interests of the accused in municipal court prosecutions. He found that the discretion of the trial judge was a bastion against abuses:
There are several compelling reasons to uphold New Jersey's Municipal Court Rule. The Rule facilitates a kind of peoples' court wherein citizens may bring their disputes and uphold the laws of the community through the uncomplicated procedures of the municipal court. While there is the possibility of frivolous suits and vindictive behavior by some complainants, abuses are checked and deterred by the court's discretion and by the various other remedies available for malicious prosecution. The possibility for prosecutorial abuses under this system is not fantasy, .... Id. at 492.
Judge Sarokin saw the fairness issue in the following light:
The risk of abuses from such practice is equally obvious. Individuals can and do utilize such criminal proceedings to bolster a related civil proceeding or merely for vindictive or harassing purposes. In addition to possible improper initiation, the conduct of such proceedings risks a violation of due process. The *301 strictures which guide and limit a prosecutor are unknown to the private citizen and are difficult to enforce. Plea bargains which are otherwise available would not be. Duties of disclosure and other constitutional safeguards likewise would be unknown and unenforced. Thus, in the initiation and the conduct of such private prosecutions, the self-interest of the complainant-prosecutor, absent the safeguards imposed upon a neutral prosecutor, place the constitutional rights of the named defendant in jeopardy.
In certain cases, the conflict of interest of a self-interested complainant acting in the role of prosecutor may be of such a magnitude that the court should prohibit a complainant or her agent from acting as prosecutor. Imperiale, supra 773 F. Supp. at 748.
He found that defendant is entitled to an "impartial and disinterested" prosecutor, Imperiale, supra 750, and that particularly where potential civil actions may be extant or in the offing an unavoidable "structural conflict of interest" arises. Id. Nevertheless, Judge Sarokin also did not find it necessary to declare the Rule unconstitutional. Rather, he focused on four factors that a trial judge should consider in deciding whether to permit either a pro se party or an attorney on behalf of a party to prosecute in municipal court. I quote:
Apart from Judge Debevoise's "penalty" analysis, other courts which have considered (post-trial) how an interested private prosecutor affects the fairness of a trial have focused consistently on several factors: (1) the private prosecutor's actual conflict of interest, as evident from her ethical and professional obligations, her pecuniary interest in the outcome of the criminal case, etc.; (2) the degree to which the district attorney exercised and ultimately retained control over the prosecution and the possibility of preserving the appropriate prosecutorial role and function given the victim's stake in the prosecution; (3) the involvement of the trial court in the criminal trial and whether the district attorney specifically declined to prosecute the case; and (4) involvement of the prosecutor in a pending civil case concerning the same facts as the criminal charge ... In addition, it may be appropriate to add to this list the Vuitton Court's special concern with the appearance of justice, although the actual holding in Vuitton concerned the intolerable potential for misconduct arising from a private prosecutor's necessary conflict of interest. Id. 773 F. Supp. at 755.
In addition, ... "the analysis should turn on the nature and magnitude of the conflict, not the penalty." Id.; See also Young v. U.S. Ex Rel Vuitton, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).
Given the serious and scholarly attention to this rule by two respected Federal Judges, this court finds it in order to largely *302 adopt their reasoning (although not bound to do so) for the guidance of the municipal courts, at least in Burlington County, even though the rule is not in fact as important as it once was here. As Assignment Judge, I take notice that all 39 municipal courts in Burlington County are staffed with part-time Prosecutors. Furthermore, I recently issued a directive under my authority as Assignment Judge to these Prosecutors that they were not routinely to decline to prosecute so-called "citizen" complaints. That practice was intolerable leaving pro se people virtually helpless to vindicate themselves and often leaving the judge in the position of prosecutor.[1]
Nonetheless, since the rule has been found constitutional but also to bear serious implications for a fair and impartial trial in the municipal courts, I hold that a municipal judge should not adopt a flat rule for or against permitting private parties, represented or pro se, to prosecute.[2] The decision is discretionary and should be based on the seriousness of the case, whether the municipal prosecutor consents to stand aside (refusal of which to do so, absent very unusual circumstances, should be deemed final), and the factors mentioned above. Counsel wishing to appear as private prosecutor should advise the court, the Municipal Prosecutor and the defendant or his or her counsel in advance of the trial and disclose by certification all the factual information necessitated by the listed factors with particular emphasis on the existence of or potential for civil litigation.
*303 In this case, Mr. Weishoff recognized the implications of what he was asking the court. At argument on appeal he clearly indicated he would have no right to prosecute, under the Rule, absent the consent of the regularly appointed Prosecutor. He also abjured prosecuting in any case where the defendant was a tenant or residing permanently in an apartment with a tenant because of the omni-present potential for eviction proceedings in Special Civil Part. Finally, this clearly is not a revenge prosecution as in Imperiale. Nor does it have civil implications.
For these reasons, despite the thoughtful decision below, however close it came to the mark, to reject Weishoff's application in this case was error and must be reversed since the potential for an unfair conflict of interest simply does not exist in this case. It is so ordered. The matter is remanded to the Municipal Court for further proceedings.
NOTES
[1] It is my impression that with the huge press of municipal court business, municipal prosecutors welcome victims' private counsel; and unlike the court below, most magistrates routinely grant leave under Rule 7:4-4(b) to private counsel whenever they appear. Under the court's ruling this practice will have to be revised by judges and prosecutors alike.
[2] By way of dicta, I suggest another look be taken at Ethics Opinion 523. Frankly, in light of the Federal Court analysis, I am shocked by it. The mere appearance of a part-time public official being paid by a private party to do what is his duty to do smacks of corruption even where special schedules are necessary to dispose of the case. Vuitton, supra.